UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LYDIA GUIDRY**                                                      **CIVIL ACTION**

**VERSUS**                                                             **NUMBER: 20-2907**

**SOCIAL SECURITY ADMINISTRATION**                     **SECTION: "H"(5)**

**REPORT AND RECOMMENDATION**

Plaintiff Lydia Guidry filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and the issues are ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.  **BACKGROUND**

Plaintiff filed her applications for DIB and SSI on April 20, 2017, alleging a disability onset date of April 30, 2013. (Adm. Rec. at 233-45). Plaintiff alleged disability due to hepatitis C, heart problems, mild stroke, a spot on her brain, severe headaches, anxiety, depression, panic attacks, and stress. (*Id.* at 111-12). Plaintiff, born on January 12, 1967, was 46 years old on the date on which she alleged disability and 50 years old on the date that she filed her application. (*Id.* at 233). Plaintiff has a ninth-grade education, (*id.* at 260), and she has past work experience as a janitor and working on a peeling machine. (*Id.* at 274).

Defendant initially denied Plaintiff's application on March 21, 2018. (*Id.* at 141-42). Plaintiff sought an administrative hearing, which Defendant held on September 9, 2019. (*Id.* at 51-90). Plaintiff and a vocational expert ("VE"), Beth Drury, testified at the hearing.

On October 1, 2019, the ALJ issued a decision in which he concluded that Plaintiff is not disabled. (*Id.* at 26-41). In the decision, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, osteoarthritis of the right acromioclavicular joint, migraines, obesity, and post-stress fracture of the left cuboid. (*Id.* at 28-29). The ALJ ultimately held, however, that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 31). The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work activity as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff can never climb ladders, ropes, or scaffolds. (*Id.* at 34). She can occasionally climb ramps or stairs, bend, balance, stoop, kneel, crouch, and crawl. (*Id.*). She has no limitations in hearing or seeing, but she cannot be exposed to extreme heat or cold or work at unprotected heights. (*Id.*). She cannot operate hazardous machinery and cannot drive commercial vehicles. (*Id.*). She can have unlimited contact with the public, supervisors, and coworkers, but she cannot perform fast production work (like working on an assembly line or at a fast-food workplace). (*Id.*). She can push or pull with her bilateral upper extremities frequently and can operate foot controls frequently with her bilateral lower extremities. (*Id.*). She can occasionally reach over her head bilaterally to the left and right with full extension. (*Id.*). She can frequently reach bilaterally in all other directions and can frequently and constantly feel. (*Id.*). She may be off task zero to five percent throughout the

2

workday, not including the morning and afternoon breaks and her lunch break.  (*Id.*).  She has a mild impairment in remote memory but no impairment in recent memory, and a mild impairment in understanding, remembering, and concentrating, which is reflected in the off-task limitation.  (*Id.*).   She can make changes in a work-like setting as needed.  (*Id.*).  Ultimately, the ALJ concluded that Plaintiff can perform her past relevant work as a cleaner/housekeeper.  (*Id.* at 40).   The ALJ thus denied Plaintiff DIB and SSI. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled.  On March 18, 2020, the Appeals Council reviewed the ALJ's opinion and upheld it.  (*Id.* at 1-9).  Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991).  If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.  *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary

3

choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

**III.   ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in

any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Id.* at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a Plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUE ON APPEAL

There are three issues on appeal:

(1) Whether the ALJ erred when he concluded that Plaintiff can perform a significant number of jobs that exist in the national economy.

(2) Whether the ALJ's correctly determined that Plaintiff's bilateral hand impairment is not severe under step two of the sequential evaluation.

(3) Whether substantial evidence supports the ALJ's RFC determination.

## V. ANALYSIS

### 1. Whether the ALJ erred when he concluded that Plaintiff can perform a significant number of jobs that exist in the national economy.

Per statutory law, work exists in the national economy if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). As the Fifth Circuit has determined, the jobs are not required to be in the claimant's state or region, but they must exist in significant numbers in the ***national*** economy. *See* 20 C.F.R. §§ 404.1566(b), 404.1566(c), 416.966(b), 416.966(c); *see also Coatney v. Callahan*, 125 F.3d 851 (5th Cir. 1997) ("The jobs are not required to be in the claimant's state or region, but they must exist in significant numbers in the 'national economy.'" (citation omitted)); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("the proper focus generally must be on jobs in the national, not regional, economy"). The regulations specifically state that a person will be found not disabled if her RFC and vocational abilities make it possible for her to do work which exists in the ***national*** economy even if the claimant remains unemployed because of her inability to get work, lack of job openings, cyclical economic conditions, or lack of work in the claimant's local area. 20 C.F.R. §§ 404.1566, 416.966.

The Fifth Circuit has not set a bright line for what constitutes a significant number of jobs. Instead, the Court has indicated that the determination is based on "common-sense." *See, e.g., Lirley v. Barnhart*, 124 F. App'x 283, 283 (5th Cir. 2005) ("A common-sense reading of the ALJ's findings, however, is that the ALJ determined that a significant number of inspector jobs, as well as a significant number of surveillance system monitor jobs, exist in the national economy."). "Courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, but have generally held that what constitutes a "significant" number of jobs is a "relatively low

7

threshold number." *Thomas v. Astrue*, Civ. A. No. 2:11-CV-96, 2012 WL 3544837, at *4 (S.D. Miss. July 31, 2012) (citations omitted).  The VE testified that the jobs of hostess, usher, and boat rental clerk comprised 34,500 jobs nationally and that Plaintiff can also perform her past relevant work as a cleaner/housekeeper.  (Adm. Rec. at 86-88).  The Court finds that Plaintiff has failed to demonstrate that this number does not constitute a significant number of jobs in the national economy.  Indeed, other circuits have found even fewer jobs constitute a significant number. *See, e.g., Purdy v. Berryhill*, 887 F.3d 7, 12, 16-17 (1st Cir. 2018) (rejecting attack on VE testimony that established 32,400 jobs in nation was significant); *Sanchez v. Comm'r Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding that 18,000 jobs in nation was significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (holding that 6,000 jobs in nation "fits comfortably within" a significant number) (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (holding 2,000 jobs in nation was significant)); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (concluding that 200 jobs in Iowa and 10,000 in nation was significant); *Gutierrez v Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs in nation was significant, but "a close call"); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (determining that 11,000 jobs in nation was significant); *Atha v, Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (per curiam) (holding that 440 jobs in Alabama and 23,800 in nation was significant).

Similarly, district courts in the Fifth Circuit have found that less than 34,500 jobs nationally constitutes a significant number.  *See Warren v. Astrue*, No. 09-CV-417, 2011 WL 344268, at * 3 n.2 (E.D. Tex. Aug. 5, 2011) (providing that 25,000 jobs nationally are a "significant number of jobs"); *McGee*, 2009 WL 2841113, at *6 n.14 (finding that 18,760 jobs

8

in the national economy constitute significant numbers); *Hardine v. Comm'r of Soc. Sec.*, Civ. A. No. 4:19-CV-147, 2021 WL 1098483, at *1 (N.D. Miss. Feb. 26, 2021) (holding that 36,436 jobs in the national economy constitutes a significant number of jobs); *Ellis*, 2013 WL 595071, at *4 (finding that 16,566 jobs nationwide represented a significant number of jobs). Moreover, the testimony of any VE is typically just a sampling of jobs a person can perform, not an exhaustive list of possible employments. *Price v. Comm'r of Soc. Sec.*, 1:16CV-43, 2016 WL 7443793, at *2 (N.D. Miss. Dec. 22, 2016).

Plaintiff is incorrect that 455 positions in the state is not a significant number of jobs. The United States District Court for the Western District of Louisiana has noted that even as little as a few hundred jobs in a small state such as Louisiana was significant. *Ellis v. Astrue*, Civ. A. No. 11-2121, 2013 WL 595071, at *4 (W.D. La Jan. 17, 2013); *McGee v. Astrue*, Civ. A. No. 08-0831, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009); *O.D.W. v. U.S. Comm'r. Soc. Sec. Adm.*, Civ. A. No. 2009 WL 5108393 at *2 (W.D. La. Dec. 17, 2009); *March v. U.S. Comm'r. Soc. Sec. Adm.*, Civ. A. No. 07-cv-1716, 2008 WL 5273725 at *4 (W.D. La. Dec. 16, 2008). In *Mercer*, the Court determined that 500 jobs in Texas and 5,000 jobs in the national economy constituted a significant number of jobs. *Mercer v. Halter*, No. Civ. A. 4:00-CV-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001). In *Thomas v. Astrue*, the Court found that 500 jobs in the state of Mississippi constituted a significant number. Civ. A. No. 1:10-CV-472, 2012 WL 3544837 (S.D. Miss. July 31, 2012). A Texas district court later concluded that 1,000 in the large state constituted a significant number of jobs. *Escatel v. Colvin*, Civ. A. No. 3:14-CV-02517, 2015 WL 2379113, at *7 (N.D. Tex. May 18, 2015). And the Eighth Circuit has determined that only 200 jobs in the state represents a significant number of jobs. *Johnson*,

108 F.3d at 181. Based on this case law, the Court thus finds that 455 jobs in the State of Louisiana constitute a significant number of jobs.

The relevant regulatory provision provides that the question is whether a significant number of jobs exists in the national economy and not the percentage of the jobs compared to the total number of jobs in the national economy. 20 C.F.R. §§ 404.1566, 416.966. "Whether the number of alternative jobs is significant cannot be answered in terms of percentages of the overall job market." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) ("[W]hen there is testimony that a significant number of jobs exists for which the claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area."). Thus, Plaintiff's reliance on the overall percentage of cleaning/housekeeping jobs is misplaced.

In this lawsuit, the VE testified that there were 34,500 jobs in the national economy that a person with Plaintiff's profile can perform. (Adm. Rec. at 83-89). The Appeals Council concluded that 34,500 jobs constitute a significant number of jobs in the national economy. (*Id.* at 7). Plaintiff did not question the VE's testimony or provide evidence to rebut her testimony. (*Id.* at 83-89). Plaintiff cannot now be heard to complain of the adequacy of the VE's testimony when she did not believe it worthy of cross-examination at the oral hearing. *Abel v. Soc. Sec. Admin.*, Civ. A. No. 18-7715, 2019 WL 5565967 (E.D. La. Aug. 15, 2019) (citing *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("When plaintiff was afforded the opportunity to cross-examine the vocational expert as to any perceived deficiency and chose not to develop the issue at the administrative hearing, he cannot now complain of the

adequacy of the ALJ's hypotheticals to the vocational expert."). Accordingly, Plaintiff's argument is meritless.

> 2. **Whether the ALJ correctly determined that Plaintiff's bilateral hand impairment is not severe under step two of the sequential evaluation.**

Plaintiff contends that the ALJ erred when he concluded that her bilateral hand osteoarthritis is non-severe at step two of the sequential evaluation. Relying on *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), Plaintiff contends that the ALJ applied the wrong legal standard as he did not rely on *Stone* or its progeny. Plaintiff's argument is misplaced.

The Fifth Circuit has recognized that *Stone* is *only* at issue in cases in which the ALJ denies benefits at step two of the sequential evaluation process. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987). If the ALJ's analysis proceeds past step two, a claimant's argument that the ALJ applied the wrong severity standard is moot. *See id.*; *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987). Here, the ALJ overall found in Plaintiff's favor at step two and proceeded through the remainder of the five-step analysis. (Adm. Rec. at 28-40). This case does not turn on whether Plaintiff's impairment was severe but on whether she can perform other work that existed in the national economy, an inquiry that the *Stone* test does not affect. *See Chaparro*, 815 F.2d at 1011. Plaintiff's argument is thus irrelevant to resolution of this case.

> 3. **Whether substantial evidence supports the ALJ's RFC determination.**

The ALJ concluded that Plaintiff can push or pull with both arms frequently, occasionally reach overhead to the right and left with full extension, frequently reach with both arms in all directions, frequently and constantly feel. (Adm. Rec. at 34-40). The Court

11

finds that the ALJ included all of the limitations that the record supported. (*Id.* at 34). Plaintiff maintains that the ALJ should have included limitations resulting from her "bilateral hand weakness and pain."

Plaintiff has failed to cite to any medical evidence to support the inclusion of the limitation. Plaintiff sought treatment for right hand pain on January 20, 2015, after hitting her hand. (*Id.* at 734). She had full range of motion of her right hand with minimal tenderness to the second metacarpophalangeal joint. (*Id.* at 735). An x-ray revealed no abnormalities or issues. (*Id.* at 736). Plaintiff returned for a follow-up appointment on February 18, 2015, when she complained of continued aching from the accident but noted that the pain was improving. (*Id.* at 742). She denied muscle weakness, numbness, and tingling. (*Id.* at 742). During a visit on April 29, 2015, Plaintiff stated that her pain was slightly worse than at her visit on July 16, 2014 and caused her to drop things and have difficulty opening jars. (*Id.* at 817). A physical examination revealed that Plaintiff had normal strength, normal sensation throughout her hands and arms, and full range of motion, although Phalen's test[1] was positive for carpal tunnel syndrome. (*Id.* at 819-820). A nerve conduction study in June 2015 was consistent with borderline mild right carpal tunnel syndrome, but an electromyogram showed no evidence of ulnar or peripheral neuropathy. (*Id.* at 347).

---

[1] Phalen's test is a provocative test used in the diagnosis of carpal tunnel syndrome. The patient places her flexed elbows on a table, allowing her wrists to fall into maximum flexion. The patient is asked to push the dorsal surface of her hands together and hold this position for 30-60 seconds. This position will increase the pressure in the carpal tunnel, in effect compressing the median nerve between the transverse carpal ligament and the anterior border of the distal end of the radius. Phalen's test is considered positive when the patient's symptoms are reproduced, the test gives the same symptoms as that experienced with carpal tunnel syndrome, namely paresthesia (tingling, numbness) in the distribution of the median nerve. https://www.physio-pedia.com/Phalen%E2%80%99s_Test.

In September 2015, Plaintiff complained of intermittent pain in the left wrist and fingers with numbness and tingling after an incident, but she denied any attempt to relieve the symptoms. (*Id.* at 861-862). Plaintiff exhibited tenderness of the left wrist, pain with movement of the hand, and a limited range of motion. (*Id.* at 862). Plaintiff followed up on her carpal tunnel syndrome in January 2016, acknowledging that the night splints and tramadol had improved her symptoms. (*Id.* at 988). Sensation had decreased in the right thumb only, reflexes were normal in both hands, she had a full range of motion of her hands, and no atrophy. (*Id.* at 988). In July 2016, Plaintiff complained of pain in her left wrist and thumb which she described as numbness. (*Id.* at 1056). Plaintiff had normal strength and reflexes, no atrophy, and a full range of motion. (*Id.* at 1059). By September 2016, Plaintiff had no morning stiffness in her fingers and rated her pain as 2/10 with 10 being the worse without medication. (*Id.* at 1092). She again denied morning stiffness in December 2016. (*Id.* at 1141).

Plaintiff returned to CHAC Physical Medicine & Rehab ("CHAC") in Houma, Louisiana on February 22, 2017, complaining of left thumb pain. (*Id. at* 1163). Plaintiff had normal strength, sensation, and reflexes in both hands with tenderness in the thumb. (*Id.* at 1171). Dr. Matthew L. Bloom ordered occupational therapy and advised Plaintiff to return in nine months. (*Id.* at 1171). In April 2017, Plaintiff sought treatment for pain in her left hand after she punched another person's arm. (*Id.* at 1267). She exhibited tenderness and swelling in her right hand with decreased strength but normal sensation. (*Id.* at 1269). An x-ray showed mild arthritic changes in her right thumb but no fractures and no change from an x-ray in January 2015. (*Id.* at 1271, 1279). At a follow-up appointment the next month, Plaintiff had

13

right hand tenderness, but an x-ray showed only mild arthritic changes. (*Id.* at 1278-1279). At an appointment on August 1, 2017, Plaintiff stated that she had right hand pain, but a physical examination showed normal range of motion and reflexes but no tenderness swelling, effusion, or deformity. (*Id.* at 2689). In September 2017, Plaintiff complained of right arm and left back pain after tripping over a wire. (*Id.* at 1541). She had tenderness and decreased range of motion in her right shoulder, tenderness yet normal range of motion in her right wrist, and tenderness in her right upper arm. (*Id.* at 1543). An examination of her right hand was normal. (*Id.* at 1544). X-rays of multiple areas were all normal. (*Id.* at 1545-1549). At a follow-up appointment two weeks later, Plaintiff had muscular tenderness of her right arm but no swelling or edema and normal reflexes. (*Id.* at 2629). At an appointment in November 2017, Plaintiff complained to Dr. Michael J. Retzler of sharp pain in her thumbs of the first two fingers of each hand and numbness in both forearms. (*Id.* at 2711). She admitted to Retzler that her medications helped her pain. (*Id.* at 2711). She admitted that she had not done the occupational therapy or physical therapy prescribed during her February 2017 visit, noting that no one had called her to schedule the appointments. (*Id.* at 2711). Given the disabling pain and symptomatology that Plaintiff alleges that she experienced, the Court questions why she did not follow up when no one called her. Despite her complaints, Plaintiff had normal strength, sensation, and reflexes with some tenderness in her right index finger and left thumb. (*Id.* at 2715).

Plaintiff sought treatment on January 22, 2018, complaining of pain in her hands, morning stiffness in her hands, and tingling and numbness in the pads of her fingers on her right hand. (*Id.* at 2746, 2764). Plaintiff had limited passive range of motion in her hands,

14

with slightly decreased strength, a weakened grasp in her right hand, but normal sensation without numbness or other weakness. (*Id.* at 2765). Plaintiff returned in July 2018, complaining of pain in both hands with nighttime numbness. (*Id.* at 2936). Plaintiff exhibited normal strength, sensation, and reflexes with tenderness in her right wrist and finger joints. (*Id.* at 2941). In September 2018, Plaintiff complained to Medical Assistant Marion Granger at CHAC of bilateral hand pain for a year, but a nerve conduction study and electromyogram were normal. (*Id.* at 2978-2979). Plaintiff complained of the same symptoms in January 2019, and a physical examination showed no changes from her earlier appointment. (*Id.* at 3071-3083).

Plaintiff began occupational therapy on January 30, 2018. (*Id.* at 1955-1958). Plaintiff demonstrated edema in her right hand with decreased range of motion of her right wrist but normal sensation. (*Id.* at 1957). In February 2018, Plaintiff demonstrated a grip strength of 25 pounds for the right hand and 35 pounds for the left. (*Id.* at 1968). By March 20, 2018, Plaintiff had a grip strength of 40 pounds in both hands. (*Id.* at 1976).

Plaintiff sought treatment on September 28, 2017, complaining of continued right shoulder, arm, and wrist pain secondary to a fall. (*Id.* at 2696). Plaintiff had muscular tenderness in her right arm but normal reflexes, and no swelling or edema. (*Id.* at 2696). She returned in January 2018 with continuing complaints of pain. (*Id.* at 2738). Plaintiff exhibited decreased range of motion of her right shoulder with tenderness, but no swelling. (*Id.* at 2739). Magnetic resonance imaging showed mild arthritic changes in the shoulder. (*Id.* at 2777). In July 2019, Plaintiff complained of right arm pain since a fall two years earlier but denied weakness, numbness, or tingling. (*Id.* at 3344). A physical examination showed

15

normal reflexes and no tenderness, swelling, edema, or deformity. (*Id.* at 3346). On August 1, 2019, Plaintiff had slightly decreased reflexes in her right arm and tenderness in her right trapezius and paraspinals, but normal strength. (*Id.* at 3384, 3388). The next month, a physical examination showed normal range of motion and strength with mild tenderness in her right trapezius. (*Id.* at 3512).

As the records outlined above demonstrate, Plaintiff's impairments of her right hand and shoulder were mild and did not result in significant limitations in her ability to perform daily activities. Although Plaintiff underwent occupational therapy, within two months her grip strength increased to 40 pounds in both hands. The ALJ considered Plaintiff's treatment for her hand complaints when he determined her RFC. (*Id.* at 29). Plaintiff contends that the ALJ did not incorporate her hand weakness and pain in conjunction with her right shoulder complaint. However, Plaintiff has failed to enumerate exactly what limitations that she believes resulted from her mild impairments. Notably, none of the medical personnel who examined Plaintiff opined that she had any limitations or was unable to work. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (holding that substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled). Nor does the medical evidence support findings beyond those outlined in the ALJ's RFC assessment. Despite Plaintiff's allegations of debilitating pain and limitations, physical examinations did not show muscle atrophy, wasting, or weakness as one might expect to find with an individual as restricted as Plaintiff alleges she is. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding that

16

objective factors include limitation of motion, muscular atrophy, weight loss, impairment of general nutrition; a lack of such factors can itself invalidate disability claim). Thus, the evidence supports the ALJ's RFC assessment.

To assess a claimant's ability to perform work-related activities, the ALJ is required to consider all of the claimant's alleged impairments, even those that she determines are not severe. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (holding that a nonsevere impairment must still be considered in the ALJ's RFC finding). Thus, it was not error for the ALJ to include restrictions related to Plaintiff's hand and shoulder impairments in the RFC assessment.

Additionally, the Appeals Council did not err when it adopted the VE testimony given in response to a hypothetical question that was more restrictive than Plaintiff's RFC. It is common sense that a person with fewer restrictions can do jobs that can be performed by people with greater restrictions. Moreover, if the Appeals Council had used the more restrictive hypothetical question that the ALJ had presented to the VE, she still would have been found able to perform the jobs of hostess, usher, and boat rental clerk. (Adm. Rec. at 83-89). While Plaintiff would have preferred a different outcome, she has not pointed this Court to any case law or regulation that precludes the Appeals Council from basing its decision on the jobs that the VE cited. Accordingly, this argument fails.

## VI. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Rec. doc. 21) be **DENIED**, Defendant's Cross-Motion for Summary Judgment (Rec. doc. 22) be **GRANTED**, and Plaintiff's complaint be **DISMISSED WITH PREJUDICE.**

17

**NOTICE OF RIGHT TO OBJECT**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).[2]

New Orleans, Louisiana, this 7th day of December, 2021.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.